UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

COLUMBIAN CHEMICALS COMPANY               CIVIL ACTION

VERSUS                                 NO. 15-382-JJB-RLB

BRANDYWINE GROUP OF
INSURANCE AND REINSURANCE
COMPANIES

**NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on December 15, 2015.

_____

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

COLUMBIAN CHEMICALS COMPANY                    CIVIL ACTION

VERSUS                                         NO. 15-382-JJB-RLB

BRANDYWINE GROUP OF
INSURANCE AND REINSURANCE
COMPANIES

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the court is Plaintiff's Motion to Remand. (R. Doc. 5).  The motion is opposed.

(R. Doc. 13).  Plaintiff has filed a Reply. (R. Doc. 18).  The court held oral argument on

November 18, 2015.

I.      Background

On March 13, 2015, Columbia Chemicals Company ("Plaintiff" or "CCC") filed this

insurance contribution action against Brandywine Group Insurance and Reinsurance Companies

("Brandywine") in the 19th Judicial District Court, East Baton Rouge Parish, Louisiana. (R. Doc.

1-1, "Petition").  Prior to the filing of this lawsuit, CCC was a defendant in an action styled

*Naquin v. Columbian Chemicals, et al.*, Civil District Court for the Parish of Orleans, Louisiana,

Case No, 12-7321 (the "Naquin Suit"). (Petition, ¶ 7).  According to CCC, sixteen executive

officers (the "Executive Officers")[1] of CCC's predecessor, Cities Services Company ("Cities"),

were identified as CCC's joint tortfeasors in the Naquin Suit.[2] (Petition, ¶ 8).

---

[1] The Executive Officers are Albert Wempe, Bruce Wilson, George Smith, R.A. Hunter, George Noone,
Ted Dickerson, Clyde May, W.J. Robicheaux, Charles Smith, William Kelley, Dr. Veronica Years,
Carroll G. Webb, John W. Swanson, E.G. Simmons, Adolph Shotts, and Dr. Ross Meyerson. (Petition, ¶
8).
[2] The instant Petition does not identify whether these individuals were named defendants in the Naquin
Suit.  According to CCC's Reply, the Executive Officers were not identified as defendants and the Naquin
Plaintiffs instead sued the Executive Officer's excess insurer through the Louisiana direct action statute,

1

According to the instant Petition, the Naquin Suit alleged that Henderson Phillip Naquin, Sr. ("Mr. Naquin") developed malignant mesothelioma as a result of exposure to asbestos during the course of his employment at a facility in Centerville, Louisiana (the "Facility") between 1962 and 1987. (Petition, ¶ 9).  The Facility was owned by either CCC or its predecessor-in-interest during the time of Mr. Naquin's employment. (Petition, ¶¶ 9-12).  Insurance Company of North America ("INA") issued commercial general liability policies providing coverage to Cities (including the division that operated the Facility and ultimately became CCC) from 1961 through 1977 (the "INA Policies"). (Petition, ¶¶ 13-14).  The INA Policies also provide coverage for claims against the Executive Officers for "bodily injury." (Petition, ¶¶ 15-16).

CCC alleges that the plaintiffs in the Naquin Suit (the "Naquin Plaintiffs") alleged that the Executive Officers negligently caused Mr. Naquin's injuries, including mesothelioma and death, by failing to provide a safe workplace for Mr. Naquin while he was employed at the Facility. (Petition, ¶ 17).  CCC further alleges that the Naquin Plaintiffs' claims arise from "bodily injury" as defined in the INA Policies and, accordingly, the INA Policies provide coverage for any fault attributable to the Executive Officers in the Naquin Suit. (Petition, ¶¶ 18-19).

CCC alleges that Brandywine "is the successor in interest to INA as the insurer of the INA Policies." (Petition, ¶ 3).  CCC alleges that it informed Brandywine of the claims in the Naquin Suit and asked Brandywine to participate in settlement negotiations to avoid the instant contribution action, which Brandywine refused to do. (Petition, ¶¶ 21-22).  CCC further alleges that the parties in the Naquin Suit reached a settlement on October 28, 2014 "as to CCC and the

La. R.S. § 22:1269. (R. Doc. 18 at 4-5).  According to the "Third Supplemental and Second Amended Petition for Damages" submitted by the Naquin Plaintiffs in state court, the Naquin Plaintiffs sued Certain Underwriters at Lloyd's London through its "capacity as insurers of CCC and/or its predecessors and/or its executive officers." (R. Doc. 18-1 at 13).

Executive Officers," and that CCC agreed to make the settlement payment "in exchange for a full release" of the Naquin Plaintiffs' claims against CCC (the "Settlement"). (Petition, ¶¶ 23-25).[3]  CCC claims that the amount it paid in the Settlement exceeds its virile share of any actual or potential liability to the Naquin Plaintiffs, thus providing it a cause of action in contribution under Louisiana law. (Petition, ¶¶ 26-34).  Accordingly, CCC filed the instant lawsuit seeking contribution against Brandywine and filed its Petition pursuant to the Louisiana direct action statute, La. R.S. § 22:1269 (formerly La. R.S. § 22:655).[4]

On June 12, 2015, an entity named Century Indemnity Company ("Century") filed a Notice of Removal alleging that it was wrongly identified as Brandywine in the Petition. (R. Doc. 1).[5]  In the Notice of Removal, Century alleges that there is complete diversity between the parties,[6] the amount in controversy requirement is facially apparent,[7] and the "case is not a direct action for the purposes of 28 U.S.C. § 1332(c) and thus the citizenship of the alleged executive officers listed in paragraph 8 of Plaintiff's Petition are not considered for diversity purposes." (R. Doc. 1 at 2).

On July 10, 2015, Plaintiff moved for remand on the basis that this is a direct action and removal was made in violation of the forum-defendant rule. (R. Doc. 5).

---

[3] At oral argument, Plaintiff's counsel made it clear that the Executive Officers were not parties to the Settlement.

[4] Other than the Louisiana direct action statute, the Naquin Plaintiffs do not cite any specific Louisiana statutes or jurisprudence providing them with a cause of action for contribution in this matter.

[5] There is no dispute between the parties that Century is a proper defendant.  The court notes, however, that Century has not been named a defendant in this lawsuit in place of, or in addition to, Brandywine.  To avoid confusion, the court will refer to Century in place of Brandywine, as the parties do in their briefing.

[6] Century alleges that it is a citizen of Pennsylvania and CCC is a citizen of Delaware and Georgia. (R. Doc. 1 at 2).

[7] Century bases this assertion on the fact that Mr. Naquin suffered from mesothelioma, a terminal cancer. (R. Doc. 1 at 2).  At oral argument, Plaintiff's counsel conceded that there was no dispute that the amount in controversy requirement is satisfied.

**II.     Arguments of the Parties**

In support of remand, CCC argues that its claim against Century is brought pursuant to

the Louisiana direct action statute for contribution from its joint tortfeasors, the Executive

Officers. (R. Doc. 5-2 at 1, 8).  CCC accordingly argues that Century is a citizen of the state of

citizenship of each of its insureds, the Executive Officers, pursuant to Section 1332(c)(1)(A). (R.

Doc. 5-2 at 6-7).  CCC asserts that at least "one of the Executive Officers is currently a resident

of the State of Louisiana," and provides a property detail report from the Ouachita Parish

Assessor's Office (R. Doc. 5-3) in support of its assertion. (R. Doc. 5-2 at 2).  CCC further

asserts that Century carries the burden of proving its citizenship, and, therefore, CCC "need not

submit any evidence in support of its averments as to the citizenship of the Executive Officers to

succeed on its motion to remand." (R. Doc. 5-2 at 2 and n.3).

In opposition, Century argues that the present suit in not a direct action pursuant to

Section 1332(c)(1) because the Settlement is indistinguishable from a judgment obtained against

the Executive Officers and the liability of the Executive Officers is already settled. (R. Doc. 13 at

3-4).  Century further argues that CCC, a joint tortfeasor, is not an "injured party" with a right to

a direct action because any injury to it was not (as with the Naquin Plaintiffs) a result of the

underlying tortious conduct. (R. Doc. 13 at 5-7).  Century characterizes CCC's contribution

action as a first-party contract claim not encompassed by the Louisiana direct action statute

because "there can be no determination of insured status for the alleged executive officers absent

a determination that CCC (or its predecessor) was an insured under the Century policies at

issue." (R. Doc. 13 at 7-9).

In reply, CCC argues that the suit is a direct action pursuant to Section 1332(c)(1)

because no judgment was issued in the Naquin Suit and the Executive Officers were not

defendants in the Naquin Suit.  (R. Doc. 18 at 4-6).  CCC submits amended petitions in the

Naquin Suit (R. Doc. 18-1) to demonstrate that the Naquin Plaintiffs "alleged that the Executive

Officers' negligence contributed to Mr. Naquin's injuries and on that basis sued their excess

insurance carrier under the Direct Action Statute." (R. Doc. 18 at 5).  Finally, CCC argues that it

is not seeking contribution from Century as its own insurer but rather as the insurer of the

Executive Officers, which means that the action is not a first-party contract action precluded by

the Louisiana direct action statute. (R. Doc. 18 at 8-9).

III.    **Law and Analysis**

      A.    **Whether this action is a "Direct Action" under federal and state law**

            1.    **Whether Section 1332(c)(1)(A) can apply in light of the Settlement in the Naquin Suit**

The diversity statute provides a special rule governing the citizenship of insurers where a

"direct action" has been brought against them:

> [I]n any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of—every State and foreign state of which the insured is a citizen . . . .

28 U.S.C. § 1332(c)(1)(A).  Resolution of the parties' dispute regarding whether the instant

action qualified as a "direct action" pursuant to Section 1332(c)(1)(A) will determine whether

removal was procedurally defective in light of the forum-defendant rule and/or whether the court

has subject matter jurisdiction based on complete diversity.  If the instant action is not a "direct

action" pursuant to Section 1332(c)(1)(A), then Century is solely a citizen of Pennsylvania, its

state of incorporation and the location of its principal place of business. (R. Doc. 1 at 2).  The

court would then have complete diversity (because CCC is a citizen of Delaware and Georgia)

and the forum-defendant rule will not preclude removal (because Century is not a citizen of

5

Louisiana).  On the other hand, if the instant action is a "direct action" pursuant to Section

1332(c)(1)(A), Century is also deemed to be citizen of the State of each of its insureds, namely

each of the Executive Officers.  The court would then have to evaluate, based on the citizenship

of the sixteen Executive Officers, whether there is complete diversity and whether the forum-

defendant rule precludes removal.[8]

Broadly stated, an action is a "direct action" for the purposes of Section 1332(c)(1)(A)

where "a party claiming to have suffered injuries or damage for which another is legally

responsible is entitled to sue the other's liability [insurer] without joining the insured and without

having first obtained a judgment against the insured." *Hernandez v. Travelers Ins. Co.*, 489 F.2d

721, 723 (5th Cir. 1974) (quoting *Vines v. United States Fidelity & Guaranty Co.*, 267 F. Supp.

436 (E.D. Tenn. 1967)); *see also Hull v. Allstate Ins. Co.*, 682 F. Supp. 867, 868 (M.D. La. 1988)

("Direct action statutes allow a plaintiff to directly sue a foreign insurance company for recovery

of benefits under the policy without having first to secure a judgment against the insured.").

Century argues that the instant action is not a "direct action" as recognized by Section

1332(c)(1) because the "claims against the alleged insureds have been resolved and what remains

now is the question of Century's alleged responsibility under an insurance contract." (R. Doc. 13

at 4).  In support of this argument, Century relies primarily on a decision in which a default

judgment creditor sought issuance of writs of garnishment against the judgment debtor's insurers

and the insurers removed the action. *See*, *e.g.*, *Freeman v. Walley*, 276 F. Supp. 2d 597 (S.D.

---

[8] A case removed on the basis of diversity jurisdiction may only be removed "if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).  This requirement is often referred to as the "forum-defendant rule" and is procedural in nature. *In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 391 (5th Cir. 2009).  Remand is only appropriate where the defendant is a "forum defendant" and the plaintiff seeks remand within 30 days of removal.  *See In re Shell Oil Co.*, 932 F.2d 1518, 1523 (5th Cir. 1991).  CCC filed its motion to remand within 30 days of removal, and, therefore, has preserved its right to seek remand based on this procedural defect.

Miss. Apr. 30, 2003).  In *Freeman*, the court reasoned that unlike in the garnishment setting,

where "the insurer is no longer litigating the issue of its insured's liability[,] in a true direct

action, the insurer is in the position of defending the merits of the victim plaintiff's claims

against its insured, as it is litigating the insured's own liability for the plaintiff's damages, for

which the insurer is or may be answerable." *Id*. at 601.  In concluding that that the garnishment

action was not a "direct action," the court noted that "Mississippi does not recognize a 'direct

action' in its original and pure form as a tort suit against an insurance carrier to establish the

tortfeasor's liability to the plaintiff victim, and the insurer's liability therefor without the

necessity of joining the insured." *Id*. at 601 n.3.

　　　The *Freeman* decision is inapplicable to the facts of the instant action.  This is not a

garnishment action brought against an insurer based on a prior judgment obtained against the

insured.  Rather, the instant Petition establishes that CCC is seeking contribution from Century

(the alleged insurer of the Executive Officers) based on the Louisiana direct action statute, La.

R.S. § 22:1269 (formerly La. R.S. § 22:655).[9]

---

[9] Century additionally relies on federal appellate court decisions that simply highlight that the federal "direct action" jurisdictional statute was intended to limit jurisdiction only in connection with state "direct action" statutes that allowed a party to bypass the tortfeasor and directly sue the tortfeasor's insurer without first obtaining a judgment or settlement against the tortfeasor. *See Kong v. Allied Prof'l Ins. Co.*, 750 F.3d 1295 (11th Cir. 2014) (finding that "the key feature of a direct action under § 1332(c) is, and always has been, the plaintiff's ability to directly sue a tortfeasor's insurance carrier without first obtaining a settlement or verdict against the underlying tortfeasor, as required under Florida law); *Henderson v. Selective Ins. Co.*, 369 F.2d 143, 149 (6th Cir. 1966) (statute limiting jurisdiction in cases of direct action by liability insurer was intended to limit jurisdiction in connection with state direct action statutes, not deprive jurisdiction in actions by judgment creditors against liability insurers).  Furthermore, because there is no dispute that the Executive Officers were not defendants in the Naquin Suit or parties to the Settlement, the Settlement does not constitute a "judgment" against the Executive Officers pursuant to which CCC can be deemed a judgment creditor.  *See*, *e.g.*, *Garrison v. James Construction Group, LLC*, 174 So.3d 15, 17-18 (La. App. 1st Cir. 2015) (settlement is not the equivalent of a *res judicata* judgment for party who was released by but did not sign the settlement); *see also Ortego v. State Dept. of Transp. & Dev.*, 689 So.2d 1358, 1363 (La. 1997) (one must be a party to the compromise to obtain res judicata effect of settlement).

The Fifth Circuit has recognized that the "1964 amendment [Section 1332(c)] was a

response to 'direct action' statutes adopted in Louisiana and Wisconsin, allowing direct actions

against liability insurers by persons injured in motor vehicle accidents." *Hernandez*, 489 F.2d at

723.  That an action qualifies as a "direct action" under Louisiana law, however, is not a

sufficient condition for qualification as a "direct action" under federal law.  For example, the

Eastern District of Louisiana has held that an action against an uninsured motorist carrier,

although a "direct action" under the Louisiana statute, La. R.S. § 22:1269, does not qualify as a

"direct action" for the purpose of 28 U.S.C. § 1332(c)(1).  *See Gonzales v. Government*

*Employees Ins. Group*, No. 99-3707, 2000 WL 235236 (E.D. La. Feb. 28, 2000) (concluding that

an uninsured motorist policy is not a "policy or a contract of liability insurance" as required by

28 U.S.C. § 1332(c)); *but see Rayburn v. Colonial Penn Franklin Ins. Co.*, No. 98-3136, 1998

WL 883321 (E.D. La. Dec. 15, 1998) (because an action against an uninsured motorist carrier is

"clearly a direct action" under the Louisiana direct action statute, the action qualified as a "direct

action" for the purpose of 28 U.S.C. § 1332(c)(1)).

Century does not argue that the policies at issue do not qualify as liability insurance

policies as required by 28 U.S.C. § 1332(c).  Instead, Century argues that federal law requires

that an action only qualifies as a "direct action" pursuant to Section 1332(c)(1) where the party

asserting the action has "suffered injuries or damage." (R. Doc. 13 at 3) (quoting *Hernandez*, 489

F.2d at 724)).  Century argues that CCC does not constitute an "injured party" pursuant to

Section 1332(c)(1).  (R. Doc. 13 at 5).  While there is no explicit requirement in the federal

statute that an "injured party" must bring the direct action, it is clearly required by the Louisiana

statute, which provides that a direct action must be brought by an "injured person." *See* La. R.S.

§ 22:1269(B)(1).  As discussed further below, the court concludes that CCC qualifies as an

8

"injured person" under the Louisiana direct action statute.  Accordingly, any implicit requirement in the Federal direct action statute requiring the plaintiff to be an "injured party" is satisfied.

### 2.      Whether this is a precluded first-party contract action

The Louisiana direct action statute provides, in pertinent part, that "the injured person . . . shall have a direct right of action against the insurer . . . and, such action may be brought against the insurer alone, or against both the insured and insurer jointly and in solido . . . ." La. R.S. § 22:1269(B)(1) (emphasis added).  Consistent with Section 1332(c)(1)(A), the Louisiana direct action statute "applies only to liability actions and not to contract disputes" and, therefore, "does not apply to actions . . . where an insured seeks recovery under its own . . . insurance policy." *Hull*, 682 F. Supp. at 868.  "The [Louisiana] direct action statute does not create an independent cause of action against the insurer [and, instead,] merely grants a procedural right of action against the insurer where the plaintiff has a substantive cause of action against the insured." *Descant v. Adm'rs of Tulane Educ. Fund,* 639 So.2d 246 (La. 1994).

Century argues that in order for there to be a determination that the Executive Officers are its insureds, there must be a predicate determination that CCC is its insured. (R. Doc. 13 at 7).  Accordingly, Century claims that the litigation posture of the instant case involves a first-party insurance contract dispute that cannot be brought pursuant to the Louisiana direct action statute. (R. Doc. 13 at 7).  In reply, CCC argues that this is not a first-party insurance contract dispute because it is suing Century in its capacity as the insurer of the Executive Officers and it is not suing Century based on any assigned or subrogated rights from the Executive Officers. (R. Doc. 18 at 8-8).

9

In the Petition, CCC claims that the amount it paid in the Settlement exceeds its virile share of any actual or potential liability to the Naquin Plaintiffs, thus providing it a cause of action in contribution against its joint tortfeasors, the Executive Officers, under Louisiana law. (Petition, ¶¶ 24-34).  CCC does not allege that it is suing Century in its capacity as its own insurer, or that it has been assigned or subrogated any rights that would allow it to seek recovery as an insured.  At most, CCC must prove that the Executive Officers are insured pursuant to the INA policies to recover against Century.  While proof of coverage may be a predicate to any potential recovery, such a burden would be present under any direct action proceeding.

Based on the foregoing, the court concludes that CCC is not seeking recovery from its own insurer in its capacity as an insured.[10]  Accordingly, neither the Federal direct action statute nor the Louisiana direct action statute precludes this action as it is not a first-party contract action.[11]

### 3.    Whether CCC is an "injured party" under the Louisiana direct action statute

The Louisiana direct action statute provides, in pertinent part, that "the *injured person . . .* shall have a direct right of action against the insurer . . . ." La. R.S. § 22:1269(B)(1) (emphasis added).  The court will now consider whether CCC is an "injured party" within the meaning of the Louisiana direct action statute.

The Louisiana Court of Appeal for the Fourth Circuit has held that an "injured person" with a right to bring a direct action is a "person injured as a result of tortious conduct and not one

---

[10] CCC acknowledged at oral argument that it is also insured under the relevant policies.

[11] Century's reliance on *Tuck v. United Services Automobile Association*, 859 F.2d 842 (10th Cir. 1988), which it highlighted during oral argument, is inapposite.  That decision merely stands for the proposition that "claims alleging an insurer's breach of good faith and fair dealing" does not constitute a direct action pursuant to 28 U.S.C. § 1332(c)(1). *See Grefer v. Scottsdale Ins. Co.*, 207 F. Supp. 2d 546, 549 (E.D. La. 2001).

injured as a result of breach of contract." *Pennsylvania Fire Ins. Co. v. Underwriters at Lloyd's,*

140 So.2d 212, 215 (La. App. 4th Cir. 1962).  Federal courts in Louisiana have adopted this

position. *See North Am. Specialty Ins. Co. v. Georgia Gulf Corp.*, 99 F.Supp.2d 726, 728 (M.D.

La. 2000) (quoting *Pennsylvania Fire*, 140 So.2d at 215); *Taylor v. Fishing Tools, Inc.*, 274 F.

Supp. 666, 673 (E.D. La. 1967) (same); *see also Gulf Belting & Gasket Co. v. Select Ins. Co.*,

No. 04-2397, 2004 WL 2988492, at *2 (E.D. La. Dec. 14, 2004) (quoting *North Am. Specialty

Ins. Co.*, 99 F. Supp. 2d at 728); *see also Deutsche-Schiffahrtsbank A.G. v. A. Bilbrough & Co.*,

563 F. Supp. 1307, 1309 (E.D. La. 1983) (Louisiana direct action statute also does not cover "a

claim for indemnity . . . based on quasi-contract." ).  These decisions are in line with the

Louisiana Supreme Court's general announcement that the Louisiana direct action "statute

applies to accidents and damages for the injuries sustained or the losses occasioned thereby; and

the purpose of the act is to impose liability on the casualty insurer in case of the insolvency or

bankruptcy of the insured tort-feasor." *Tyler v. Walt*, 167 So. 182, 184 (La. 1936).

The U.S. District Court for the Western District of Louisiana has further held that a third-

party plaintiff with the right of contribution under Louisiana law does not qualify as an "injured

person" under the Louisiana direct action statute. *Rouley v. State Farm Mut. Auto. Ins. Co.*, 235

F. Supp. 786, 790 (W.D. La. 1964).  The *Rouley* action was brought on behalf of a child and the

defendant-insurer sought contribution from the child's father's insurer through a third-party

demand.[12] The *Rouley* court reasoned that the right of contribution does not arise at the time of

the underlying tort (as does the right of action to bring the underlying tort) because it is "founded

upon legal subrogation, which takes place when one or two or more solidary debtors pays the

---

[12] The *Rouley* court was concerned with an action where the daughter did not have a right of action
against her father, due to La. R.S. § 9:571, so the defendant-insurer could not be subrogated to a right that
the daughter did not have.

debt of all." *Id*.  This interpretation of Louisiana law is consistent with the Louisiana Supreme

Court's pronouncement, in the context of discussing third-party contribution actions, that "the

rights and obligations as between the joint wrongdoers . . . are not created by virtue of the

commission of the tort and of the provisions of Revised Civil Code Article 2315" but rather

"spring from the principle of contribution . . . [a]nd it is only after judicial demand has been

made on one of two or more solidarily obligated tort feasors that he can have any possible

interest in seeking contribution." *See Brown v. New Amsterdam Cas. Co.*, 142 So. 2d 796, 798

(La. 1962).

The Louisiana Court of Appeal for the Fourth Circuit has held, however, that a party

demanding contribution from the insurer of a mutually liable party may be an "injured person"

within the meaning of the Louisiana direct action statute. *Liberty Mut. Ins. Co. v. State Farm

Mut. Auto. Ins. Co.*, 579 So.2d 1090, 1092 (La. App. 4th Cir. 1991).  In *Liberty*, an underlying

lawsuit involving personal injuries in an automobile accident was settled and the defendants

assumed fault.  After settlement, an insurer of one defendant-tortfeasor (the "plaintiff-insurer")

brought a contribution action against the insurer of another defendant-tortfeasor (the "defendant-

insurer").  The court held that the plaintiff-insurer was an "injured person" within the meaning of

the Louisiana direct action statute because it was "demanding contribution from the insurer of a

mutually liable party." *Id*. at 1092.  Furthermore, the Louisiana Supreme Court has provided that

an insurer of a tortfeasor may, by third party demand, bring a contribution action against a joint

tortfeasor or his liability insurer pursuant to the Louisiana direct action statute. *See Shaw v. New

York Fire & Marine Underwriters, Inc.*, 212 So.2d 416, 418 (La. 1968) ("Under the Direct

Action Statute . . . the insurer is liable *in solido* with its insured . . . . When the insurer is sued

alone, it stands in the shoes of its insured for purposes of contribution.").

CCC relies on *Liberty* for the proposition that it is an "injured person" for the purpose of the Louisiana direct action statute. (R. Doc. 5-2 at 8; R. Doc. 18 at 6-8). Century argues that *Liberty* is either an anomaly or distinguishable because it did not concern removal, and urges reliance on *Rouley*, as well as other decisions. (R. Doc. 13 at 6).[13]

The court concludes that the facts of *Liberty* warrant its application to this case. Here, CCC alleges in the Petition that it settled with the "Naquin Plaintiffs in exchange for a full release" and that the "amount CCC paid in connections with the Settlement exceeded CCC's virile share of any actual or potential liability to the Naquin Plaintiffs." (Petition, ¶¶ 24-25). In other words, CCC alleges that it was legally subrogated to the rights of the Naquin Plaintiffs against its joint tortfeasors. *See* La. C.C. art. 1830(4) ("Subrogation takes place by operation of law . . . [i]n favor of an obligor who pays a debt he owes with others or for others and who has recourse against those others as a result of the payment."). Unlike the *Rouley* action, which was brought pursuant to third-party practice prior to any determination of liability, the instant action is an independent contribution action brought after a joint tortfeasor has allegedly paid more than its virile share. "[W]hen subrogation takes place by operation of law, the new obligee may recover from the obligor only to the extent of the performance rendered to the original obligee." La. C.C. art. 1830; *see Illinois Central Gulf Railroad v. Deaton, Inc.*, 581 So.2d 714, 716 (La. App. 4th Cir. 1991) ("The right acquired by a subrogee and/or assignee can be no more (and no less) than the right of the original parties."). Accordingly, because the Naquin Plaintiffs could have brought a direct action against Century as the insurer of the Executive Officers, CCC is

---

[13] Century represents that it "has been unable to locate other cases citing this decision for this holding, or other cases finding a joint tort-feasor is an 'injured party.'" (R. Doc. 13 at 6). In reply, CCC argues that *Liberty*, as a Louisiana appellate court decision, governs as opposed to the *Rouley* decision, which was by a federal district court. (R. Doc. 18 at 7-8). CCC further argues that the remaining cases relied upon by Century are inapposite as they merely stand for the proposition that "claims for breach of contract are not within the ambit of Louisiana's Direct Action Statute." (R. Doc. 18 at 8).

entitled to bring a direct action against Century because it has stepped into the shoes of the Naquin Plaintiffs through legal subrogation.

Based on the foregoing, the court concludes that CCC is an "injured person" pursuant to the Louisiana direct action statute.

**B.     The Citizenship of the Executive Officers**

Having concluded that CCC has brought a claim pursuant to the Louisiana direct action statute, the court must determine the citizenship of the Executive Officers to determine the citizenship of Century. *See* 28 U.S.C. § 1332(c)(1)(A).  If any one of the Executive Officers is a citizen of Delaware or Georgia, and Century is "deemed" to be a citizen of Delaware or Georgia, then complete diversity is destroyed and the court cannot exercise diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Similarly, if any one of the Executive Officers is a citizen of Louisiana, and Century is "deemed" to be a citizen of Louisiana, then removal is procedurally defective pursuant to the forum-defendant rule.

In light of its theory of removal, Century did not provide the citizenship of the Executive Officers in the Notice of Removal.  Plaintiff, however, has submitted a property detail report from the Ouachita Parish Assessor's Office (R. Doc. 5-3) to establish that George Smith, one of the Executive Officers, is "currently a resident of the State of Louisiana." (R. Doc. 5-2 at 2).  Even if the court accepted this document as evidence of Mr. Smith's current residency, it is insufficient to establish Mr. Smith's citizenship.  A party invoking diversity jurisdiction must allege the citizenship rather than mere residence of an individual. *See Mas v. Perry*, 489 F.2d 1974 (5th Cir. 1974) ("For diversity purposes, citizenship means domicile; mere residence in the State is not sufficient.").

Accordingly, Century should be ordered, pursuant to 28 U.S.C. § 1653, to file an amended Notice of Removal providing its correct citizenship in light of the findings in this Report and Recommendation.

**IV.     Conclusion**

Based on the foregoing, this action qualifies as a "direct action" under both Federal and Louisiana law.  Accordingly, Century is deemed to be a citizen of every state which its insureds, the sixteen Executive Officers, are citizens.  *See* 28 U.S.C. § 1332(c)(1)(A)

**RECOMMENDATION**

**IT IS THE RECOMMENDATION** of the magistrate judge that the Motion to Remand should be **GRANTED** to the extent it seeks a finding that this action qualifies as a "direct action" under both Louisiana law and 28 U.S.C. § 1332(c)(1)(A).

**IT IS THE FURTHER RECOMMENDATION** of the magistrate judge that Century should be ordered, pursuant to 28 U.S.C. § 1653, to file an amended notice of removal providing the citizenship of each of the sixteen Executive Orders, which shall be "deemed" to be the citizenship of Century for the purpose of determining the court's subject matter jurisdiction.

**IT IS THE FURTHER RECOMMENDATION** of the magistrate judge that, following the filing of the amended Notice of Removal, the magistrate judge take any other appropriate action, including the issuance of a Supplemental Report and Recommendation, regarding whether the court may exercise diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) and/or whether the action should be remanded as procedurally defective in light of the forum-defendant rule.

Signed in Baton Rouge, Louisiana, on December 15, 2015.

_____

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**